UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ISRAEL OCASIO | : |
| Plaintiff | : CIVIL ACTION NO. |
| | : 3:05 CV 01249 JCH |
| V. | : |
| | : May 24, 2007 |
| DANIEL CHALKER, | : |
| NEIL O'LEARY, and | : |
| CITY OF WATERBURY, | : |
| Defendants | : |

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 21)

### I.   INTRODUCTION

Israel Ocasio has filed a complaint against Daniel Chalker, Neil O'Leary, and the City of Waterbury, alleging false arrest and excessive force employed by Daniel Chalker.  Ocasio further alleges that Neil O'Leary, the police chief, and the City of Waterbury are liable for their customs and practices of permitting and encouraging illegal arrests and the use of excessive force.  Additionally, Ocasio claims that the defendants violated his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution, as enforced through sections 1983 and 1988 of Title 42 of the United States Code.

The defendants have moved for Summary Judgment on all claims against them, except the Ocasio's excessive force claim against Officer Daniel Chalker.  For the following reasons, the court grants in part and denies in part the Motion for Partial Summary Judgment.

1

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III. FACTS

On September 9, 2003, Officer Chalker was directing traffic on West Main Street and Prospect in the City of Waterbury. Def. Local Rule 56(a)(1) Stat. at ¶ 1.[1] A citizen approached him and said that a Hispanic male wearing a green shirt was attacking people on the Center Green (the "Green"). See Def. L.R. 56(a)(1) Stat. at ¶ 2, Incident Report at 3 (Ex. G to Def. Memo.). Officer Chalker then observed Ocasio, who fit the complainant's general description, having an argument with another individual over money. Id. at ¶ 3. When Officer Walker approached the two, he submits that he personally observed Ocasio chasing people and throwing punches at them from a boxer's stance. Id. at ¶ 4. Though never explicitly stated in the defendants' motion for summary judgment, it appears Officer Chalker concluded that Ocasio was the man described by the complainant. Ocasio states that he was engaged in a verbal disagreement with a man who had robbed him, but denies that he was attaching people. Ocasio Dep. Tr. at 14-15 (Ex. A. to Pl. Opp.).

At some point during this verbal dispute, Officer Chalker tackled Ocasio to the ground. Def. L.R. 56(a)(1) Stat. at ¶ 8; Ocasio Dep. Tr. at 16-17. After Officer Chalker tackled Ocasio, Officer Chalker placed Ocasio in handcuffs and arrested him for Breach of the Peace, Conn. Gen. Stat. § 53a-181, and Interfering with an Officer, Conn. Gen. Stat. 53a-167a. Def. L.R. Stat. at ¶ 11. As a result of this encounter, Ocasio was knocked unconscious and sustained head injuries. Ocasio Dep. Tr. at 17. He was then transported to St. Mary's Hospital for treatment. Def. L.R. 56(a)(1) Stat. at ¶ 9; Ocasio

---

[1]Local Rule 56 Statements are hereinafter cited as "L.R. 56(a)(_) Stat. at __.

Dep. Tr. at 17-18.

## IV. DISCUSSION

### A. False Arrest

A formal arrest must be supported by probable cause. See United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995). To prevail on his section 1983 claim against Officer Chalker, then, Ocasio must show that Officer Chalker did not have probable cause to arrest him. See Singer v. Fulton, 63 F.3d 110, 118 (2d Cir. 1995); see also Bernard v. United States, 25 F.3d 98, 103 (2d Cir.1994). Probable cause exists when the officers determine, at the moment of the arrest, that, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964). In determining whether the officer had probable cause, the court is to consider the facts available to the officer immediately before and at the time of arrest. See Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). "Courts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules.'" Id. (citations omitted). While the officer's observations do not need to be correct, the officer's reliance on these observations must be reasonable based on the circumstances. See Bernard, 25 F.3d at 103.

Officer Chalker contends that he had probable cause to arrest based, in part, on the complaint he received from a citizen concerning Ocasio's allegedly erratic behavior. It is well settled that, when determining probable cause for an arrest, an officer may rely

4

on the information of an informant, though there is a preference that the informant be either a victim or eyewitness. See Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir.2000). The only time an officer is not justified in relying on the information of an informant is if the informant lacks veracity. Panetta, 460 F.3d at 395. Two important factors in evaluating whether the officer properly relied on an informant are the reliability or veracity of the informant himself and the basis for the informant's knowledge. Id. Additionally, if the informant is identifiable, and the possibility of fabrication can result in criminal liability, the information is usually considered truthful. Florida v. J.L., 529 U.S. 266, 270 (2000). By contrast, an anonymous informant cannot easily be held accountable for his or her tip. Id.

According to the defendants, Officer Chalker was informed by a citizen of Ocasio's conduct and subsequently witnessed Ocasio's behavior for himself. In the incident report following his encounter with Ocasio, Officer Chalker listed the address and phone number of the original complainant, but only recorded "On Sight" in the space designated for "Complainant's Name." Incident Report at p. 2 (Ex. G. to Def. Memo.). The uncontested evidence in the record shows that the citizen went directly up the officer and told him what happened in person. Id. at 3; Chalker Depo. Tr. at 29-30. Thus, while the citizen complainant cannot be considered a known informant, the complainant certainly was not an anonymous informant. Where an "informant is only partially known . . . a lesser degree of corroboration may be sufficient to establish reasonable suspicion. See United States v. Elmore, __ F.3d __, 2007 WL 934894 at *6 (2d Cir. Mar. 29, 2007).

Although Officer Walker required less corroboration to determine the reliability of the partially-known informant, the parties' factual dispute over what occurred following the alleged tip prevents this court from deciding this issue on a motion for summary judgment. As described above, the officer claims to have seen Ocasio chasing other individuals and throwing punches at them from a boxing stance. Ocasio, however, claims there is no way Officer Chalker could have made these observations, as he was not in a boxing stance, nor was he doing anything more than engaging in a verbal argument. Because of this genuine issue of material fact, the court may not grant this portion of the Motion for Summary Judgment.

  B. <u>Qualified Immunity: Officer Chalker</u>

Officer Chalker argues that he is entitled to qualified immunity for Ocasio's false arrest claim because he had "arguable probable cause" to arrest Ocasio. Def. Memo. at 11. Officer Chalker is correct that the Second Circuit grants officers qualified immunity from section 1983 actions for money damages if there was arguable probable cause to arrest. <u>Escalera v. Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" <u>Id.</u> (quoting <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991).

As to the events surrounding Ocasio's arrest by Officer Chalker, the parties only agree that, after Officer Chalker received the complaint concerning a Hispanic male in a green shirt harassing individuals on the Green, Officer Chalker observed Ocasio in a verbal dispute with another individual over money. The central issue, therefore, is

whether the informant's tip and Officer Walker's observation of Ocasio's argument provided Officer Chalker with arguable probable cause to arrest Ocasio for Breach of Peace.[2]

Based on the record in this case, the court cannot conclude as a matter of law that Officer Chalker had arguable probable cause to arrest. While there appears to be no dispute that Ocasio matched the informant's description, Ocasio's mere involvement in an verbal dispute would tend to undermine the informant's claim that Ocasio was acting in a violent manner towards other individuals. The court therefore denies this portion of the defendants' motion for summary judgment.

    C. City of Waterbury

The court next addresses Ocasio's section 1983 claims against the City of Waterbury based on the City's alleged failure to train employees. A person trying to hold a municipality liable for the actions of an employee must state a specific policy or custom that caused the injury. See Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997). Without causation, the municipality cannot be held liable. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692 (1978). Where, as here, the plaintiff claims that a municipality caused his constitutional injury by failing to train employees, liability can be found "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

---

[2] Conn. Gen. Stat. § 53a-181 provides that a person is guilty of Breach of Peace when "with the intent to cause inconvenience, annoyance or alarm or recklessly creating a risk thereof, such person: 1) engages in fighting or in tumultuous or threatening behavior in a public place, or 2) assaults or strikes another person . . . ."

There is no evidence in the record to establish a policy of deliberate indifference by the City of Waterbury. Indeed, Ocasio does not even address the City of Waterbury's liability in his Opposition, and he admits that he has proffered no material evidence concerning O'Leary's failure to train, supervise, or control Officer Chalker. See Pl. L.R. 56(a)(2) Stat. at ¶ 16. By contrast, the defendants have put forward a number of policies and training guidelines aimed at preventing wrongful behavior by Waterbury police officers. See Def. Exs. E-F. The Motion for Partial Summary Judgment dismissing all claims against the City of Waterbury is therefore granted.

### D. Chief O'Leary

Turning to Ocasio's claims against Chief O'Leary, it is well-established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). There are no allegations in the complaint that Chief O'Leary was personally involved in the actions of Officer Chalker. Additionally, Plaintiff's Opposition does not explain Chief O'Leary connection to the constitutional violations that Ocasio alleges. Most importantly, there is no evidence in the record evidencing Chief O'Leary's personal involvement in the actions of Officer Chalker. See Pl. L.R. 56(a)(2) Stat. at ¶ 16. Therefore, the Motion for Partial Summary Judgment in regards to the claims against Chief O"Leary is granted.

### E. Cause of Action Under Conn. Gen. Stat. § 7-465

Section 7-465 "provides for the assumption of liability by the municipality for damage caused by employees if the employee is acting in the performance of his duties and within the scope of his employment 'and if such occurrence, accident, physical

8

injury or damage was not the result of any wilful or wanton act of such employee . . . .'" Carretta v. Town of Grennwich, 1993 WL 128208 at *2 (quoting Conn. Gen. Stat. § 7-465). The defendants argue that Ocasio's claim pursuant to Conn. Gen. Stat. § 7-465 is legally insufficient because that statute does not provide a direct cause of action against a municipality. While Ocasio did not dispute this aspect of the motion for partial summary judgment in his Opposition, the court disagrees with the defendants' assertion. The cases cited by the defendants all indicate that there is, in fact a private cause of action under section 7-465. See Karbowicz v. Borough of Naugatuck, 921 F. Supp. 77, 78 (D. Conn. 1995) ("Moreover, Conn.Gen.Stat. § 7-465 requires an allegation that the employee's conduct was not wanton or wilful"); Carretta, 1993 WL 128208 at *2 (finding that "the complaint does not contain sufficient allegations to give rise to a claim under General Statutes § 7-465"). The motion for summary judgment on this ground is therefore denied.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion for Partial Summary Judgment (Doc. No. 21) is GRANTED in part and DENIED in part. The Motion is granted with regard to all the section 1983 claims against the City of Waterbury and Chief Neil O'Leary. The Motion is denied with regard to the false arrest section 1983 claims against Officer Daniel Chalker and the claim under Conn. Gen. Stat. § 7-465.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 24th day of May, 2007.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge